WOODSON & TRIGG v. McCLELLAND.

MAY TERM 1837.

Woodson & Trigg
v.
McClelland.

1. Gifts from husband to wife, whether voluntary or founded on a *good* consideration, will be sustained *inter partes* in a court of equity. Where the deed is not recorded pursuant to our statute, it will still be valid between the parties, if founded on a *good* consideration.

2. Where an issue of fact is tried by a jury, or the court sitting as a jury, in a chancery cause, the only mode of having the justice of the verdict investigated in the court above, is by moving for a new trial, before the decree is pronounced. A motion to dismiss the bill for defect of evidence will not bring that question before the Supreme Court.

Statement of the case made, and opinion of the Court, delivered by TOMPKINS, Judge.

APPEAL from the circuit court of Boone County, sittings at a court of chancery.

Sarah McClelland, the appellee, filed her bill against the appellants, they answered and she replied. Issues were made up, which being found for her, she had a decree to reverse which they appeal to this court. The complainant, in her bill, states that James McClelland, her late husband, in his lifetime received from the estate of her father in her right, a sum of money with which he purchased a boy slave called James, which by his deed, executed in his lifetime, he conveyed to her; that said deed was delivered to David M. Hickman, for safe keeping. After the death of her said husband, the defendants, Woodson and Trigg, administered on his estate and took the boy James into their possession, as a part of the estate of their intestate. Their answer denies any knowledge of the alleged consideration, received by the intestate from the estate of the complainant's father, and states that it is doubtful whether the estate of the deceased will be sufficient to satisfy the creditors, and they require that the complainant be held to prove her statements. On the hearing of the cause before the circuit court, the defendant moved the court to dismiss the bill, and they now contend that on that motion the court ought not only to look into the bill to see that it contains equity, but also, to examine whether the circuit court had before it evidence sufficient to justify it in decreeing against them.

*P. R. Hayden*, for appellant.

The defendants admit that the deceased did purchase the negro with money by him received in right of his wife of the estate of her father, deceased, and that some con-

siderable time after the purchase, and after the said McClelland had had the slave in possession, he made a deed of gift of him to his said wife; but they deny that the said McClelland ever gave the possession of the slave or the deed of gift to the complainant.

They insist that the gift was voluntary, and void therefore, both in law and in equity; that it was, and is, void at common law, because the husband and wife by the principles thereof, are considered and esteemed as but one person, and incapable of making to each other such conveyances. See 1 Coke on Littleton, p. 3, (a); same book, 112, (a) section 168–7; Bacon Abr. 366. That it is void under our statute, because by it, to be valid, the deed of gift should have been proved or acknowledged, and recorded, &c., which has not been done in the present case; see Digest of Statutes, 1825, 745, sec 31. They insist that the gift is void in equity, because it was made without consideration, and that it was purely voluntary; that the donor was indebted when he made it; that he died indebted, and that it is wholly uncertain whether after the payment of his debts there will remain in the hands of the appellants, his administrators, any effects of the deceased, real or personal, to be distributed, &c. They contend that the inquiry into the solvency or insolvency of the said James McClelland, deceased, is collateral to the issue made between the parties in this cause, and that a court of equity cannot, nor will not, for the want of proper parties, and before the final settlement of the estate of their intestate, undertake to decide whether the slave donated, may or may not be needed in the payment of the debts of the deceased.

*S. Kirtly,* for appellee.

I propose a preliminary inquiry, that I insist must make short work of this case. Are the errors proposed to be inquired into before this court? The statute provides that no exception shall be taken here to any thing not expressly decided in the court below. In this case the issues made by the parties under the new revised code, was submitted to the court without the intervention of a jury, and were found for complainant, there was no motion for a new trial on the issues, or in arrest of judgment. The only error, if any, was in the finding of those issues: for the issues being found as they were, the decree followed of course. These trials of issue in chancery are on the same footing as trials at law. 1 Statutes of Missouri, 511, Art 3d, and page 522, sec 31; and it has been

settled by this court such errors cannot be revised on such a record as this. In Davidson v. Peck, 3d semi-annual reports, 438, it is decided that, if a circuit court sitting as a jury, find erroneously its judgment will not be reversed without giving the circuit court the opportunity to correct that error, this court, in that case, said the objection came too late, without a motion to arrest the judgment. In Swearingen v. Newman, decided at St. Louis at the last October term, 456, page 3d, same, semi-annual reports, this court, the same principle is sustained, and these matters in chancery and common law are put on the same footing. That decision in which the very point now under consideration was decided, I think conclusive as to this case.

In the further considering this case as far as the bill of exceptions exhibits it, I insist in the first place that, by the instrument set out in the bill and answer of the 31st of December, 1830, the appellant's intestate made a legal and valid settlement of the slave in controversy on the complainant, which cannot be impeached or set aside by the defendants in any event. Col. McClelland made this settlement not only in consideration of the marriage, which is in itself a valuable consideration for the agreement, and sufficient to give validity to the settlement against all persons except antecedent purchasers and creditors, as is clearly laid down in Kent's Com. 145, and ably adjudged in Reade v. Livingston, 3 John Chancery Reports, 481, and the numerous authorities, English and American there quoted, but also in consideration of receiving the money given for the slave, or the slave himself, by and in right of the complainant from the estate of her father, John Hunt, deceased. This, though denied by the answer, is admitted by Col. McClelland in the instrument, and abundantly proved by the witnesses. Independent then of the consideration of marriage, it was not a mere voluntary settlement, for it has been repeatedly held that such a settlement, after marriage, is good, provided the husband has received a fair and reasonable consideration for the thing settled, so as to repel the presumption of fraud; and such is the precise language deduced from the authorities on this subject; see 2 Kent, 146. It is held to be a good and sufficient consideration if the wife makes a charge on her equitable estate for the benefit of the husband, or even agrees to part with a contingent interest. It is said the amount of the thing settled should bear some reasonable proportion to the consideration received. In this case the complainant had a family of children by a

former husband, as appears by the instrument itself, and the negro, settled by the husband, also having children by a former wife, was a part, but how small a part does not appear, of the portion of complainant from the estate of her father. Surely there could be no case whereby every principle of right and justice a settlement of the kind could be more loudly called for, and ought to be so little questioned, especially by the husband of those very children of Col. McClelland, by the former wife I think the propositions above laid down are well sustained by the authorities referred to, as also 1 Alk. 190, 2 do. 518; 2 Ves. 16, 10 Ves. 139. I rely in the second place that if this could be considered a voluntary settlement without any valuable consideration known to the law, which evidently it is not, it is yet valid as against these defendants; and will be supported against all persons except purchasers and creditors. I go farther and say it would be good even against subsequent creditors, if made without any fraudulent intent; and so is the decision in the case of Read and Livingston, before referred to. The same proposition is amply supported by the supreme court of the United States in the case of Sexton against Wheaton, 8th Wheaton's Reports, 229. Chief Justice Marshall in giving the decision of the court, says, "that a review of all the decisions of Lord Hardwick will show his opinion to have been that a voluntary conveyance (even to a child) by a man not indebted, if a real and bona fide conveyance not made with a fraudulent intent, is good against subsequent creditors; and that the decisions made since the time of Lord Hardwick maintain the same principle." This decision is sustained by Shaw v. Standish, 2 Vern. 326; Stillman v. Ashdown, 2 Atkins; Fitzer v. Fitzer and Stephens; do. Walker v. Burrows, 1 Atkins, 94; Townsend v. Windham, 2 Vesay; Stephens v. Olive, 2 Brown's Chancery Reports, 90; Glaister v. Huver, 8 Ves. 199. In conclusion of these references, Judge Marshall says emphatically that a voluntary settlement in favor of a wife and children is not to be impeached by subsequent creditors on the ground of its being voluntary. But it is insisted that by the force and effect of the 31st section of the act respecting slaves, passed 1st October, 1804, the settlement of Col. McClelland is utterly void, and passes no estate to his wife. This section provides that no gift of a slave shall be sufficient to pass any estate, unless it be by will, proved and recorded, or by deed, proved by two witnesses, or acknowledged and recorded, &c. The 33d section provides that the act shall be construed to ex-

*MAY TERM 1837.*

Woodson & Trigg
v.
McClelland.

MAY TERM
1837.

Woodson & Trigg
v.
McClelland.

tend only to gifts of slaves, whereof the donors have remained in possession, and not gifts of such slaves as have at any time come into the possession of, and have remained with the donee, or some person claiming under such donee. This act was passed in 1804, and the two sections contain substantially the same principle as is enacted in relation to slaves, by the 3d section of the statute of frauds passed the 4th January, 1825. The two sections amount to this, that there may be a valid gift of a slave by will or deed, &c., without delivery of possession; but if it be by parol possession, must accompany the gift. If there be any difference in the two statutes, I understand it to be this, that the statue of frauds leaves certain agreements to operate on the parties thereto as binding, yet fraudulent against creditors, while the statute of 1804, in relation to slaves, would annul the agreement altogether. If there be any thing in this, I insist the statutes so far are repugnant, and the last passed repeals the former. I think it is clear, however, that it only embodies the principles of the common law in relation to gifts of personalty, and must be construed according to the well-established principles settled in such numerous decisons on the subject of gift. If, then, in other cases than those by will or deed recorded, it requires nothing further to constitute a good gift under the statute of 1804, than was required by the common law. It leaves the case to be determined upon the same principles, and according to the settled doctrines of the common law, and as a consequence laid down, and the authorities support this settlement most abundantly. In further answer to this objection, I insist that the complainant does not rest her claim to the slave in controversy upon a mere gift, so called, and known, in the law. These settlements of personal chattels, as the authorities show, whether anti-nuptial or post nuptial, are not so treated, or considered, but are holden to be upon good, valuable and meritorious considerations, while a gift is a mere gratuity, and upon no valuable consideration; 2 Bl. Com. 441, Joe Lowdie title gift. But I do not rest the answer here, but hold, and will endeavor, to show that the complainant can well insist that if the deed of Col. McClelland can give no other right and claim no higher ground than a mere gift, that it is still an executed, valid and sufficient gift in the law. The objection urged is, that there was no delivery;—I answer it was, by deed executed and delivered, to the friend of grantee, to be kept by him for her, delivery in all cases must be according to the nature of the thing, and the condition and situation

of the subject matter, and of the parties. In this case the
most unequivocal act in the nature of things evidenced,
that the transaction was executed and finished as perfectly
as possible, that here was not a mere intention or promise
to settle the slave on the complainant, but that intention
was acted out and perfected. She had all the use, enjoy-
ment and possession of the slave possible to give her.
Any other or further delivery would have been as idle
as to pay money out of the right into the left hand, or on
a gift or settlement of a bed or horse, to have removed
the bed from one room to another, or to have taken the
horse from one pasture and turned him into another. It
is said the law requires no vain or idle act: if, then, there
was an act equivalent to a delivery, the gift would be
good at common law, and under the statute; see 2 Kent's
Com. If, however, the transaction cannot be support-
ed as a gift, and let that be adjudged as it may, I again
insist, in conclusion, that equity will, as through a long
and uninterrupted course of adjudication, it has supported
this deed as a legal, sufficient and valid, post nuptial agree-
ment, at least against these defendants.

MAY TERM
1837.

Woodson & Trigg
v.
McClelland.

*Hayden*, in reply.

The position which I assume is, that by the motion
made by the appellant, the court was, at the time the mo-
tion was made, bound to decide it if presented *not an ab-
stract* point of law foreign to the case. That the motion
was in the nature of a demurrer to evidence in a trial at
law, and upon it the court was bound to decide upon the
whole case by looking first into the bill and answer, to
ascertain the state of case made by the parties, to see
whether any thing contained therein if proved, would en-
title the complainant to a decree in his favor; and if mat-
ter sufficient so appeared, then the second inquiry for the
consideration of the court was, whether the evidence of-
fered by the complainant or defendants proved enough
of the case stated in the bill to sustain it and to authorize
a decree; for it is clear that if on the one hand enough
in the bill did not appear to authorize a decree, the court
ought to have dismissed the bill, and so if equity appeared
in the bill, but no proof to sustain it, the court, upon the
motion, ought alike to have dismissed it; for the right to
a judgment at law, and in equity, depends upon a good
case, *stated* and *proved*. A good case without proof, or
good proof without a case, by the rules of law and equity,
(which are the same upon this subject,) leaves the party
without redress, and entitles the party opposed by such

case to a right to demand of the court the judgment of the law in his favor; and it is contended that if the party had a right to a judgment at all, *that* judgment which the law pronounces should have been rendered by the court, and that any other judgment rendered *by the court* would be, and is, erroneous. The question recurs, had the appellees a right to move the court to dismiss the bill at the time the motion was made? If they had such right, was it the duty of the court to look at the bill and *shut their eyes against the proof*, or was it the duty of the court to examine the bill for the equity, and then for the proof of *that equity?* The court in such case may be considered *at that* stage of the cause *before the final trial* of it as holding the bill *in one hand*, and the proof thereof in the other, and squaring them together, and as having the law before it, requiring and directing the case to be cast out of court, if defective either in the case stated, or in the proof of *that case*, and if the mandates of the law be violated in the judgment pronounced by the court, the judgment, so pronounced, is erroneous, and is a proper subject of inquiry under the revisory powers of this court. The great object of the law in regulating the rules of practice for the government of courts and parties litigant therein, as I humbly conceive is, to further and advance the administration of justice, and not to mar it, and upon principle, courts cannot, nor will not, lean to any construction of a rule calculated to defeat the object of it. Now, the court will perceive that the case decided at St. Louis last fall is not similar to the case before the court. In that case the party objecting to the decree, laid by until the judgment of the court was rendered, and then moved the court not to *revise* or *reconsider* the cause; he did not point out any objection either to the bill or proof of the bill, but, in effect, moved the court to dispose of a cause a second time, after it had already been disposed of. Now, it does not accord with any just principle of practice that a court should consider, reconsider, &c. &c., at the nod and whim of parties cause without reasons *shewn* or *offered;* and the motion in the case of Swearingen, it will readily be perceived by the court, gave no reasons, and presented nothing, shewing to the court why it should after the final disposition of the cause be guilty of the *childish folly* of supposing it had erred either in the finding of the facts, or in the judgment pronounced. But, in the motion made in the present case, the court was holding the case in its *own* hands, and simply required to pronounce the *judgment* of the law, required to do right, and

*not wrong*, and to make such disposition of it at once, as the party *by a motion for a uew trial founded* upon good and sufficient reasons might demand of the court after the final hearing of the cause. In the case before the court, the defendants asked the court to do in the first instance what the court in the case of Swearingen was required by the party complaining, upon a motion for a new trial, for good reasons might demand, The two motions though made at different times, viz: the one in the present case founded upon the *actual tangible case* remaining in the hands of the court undecided, and the motion for a new trial founded on good and sufficient reasons have the same object in view: that is, the rendition of a correct judgment in the cause, and the one as made in the present case is in good sense the better one, as it is attended with less expense and less trouble to the court, and does not infringe the statutory rule upon which the case of Swearingen is founded, and which was enacted with an eye soley to the steps to be taken after final decree.

<div align="right">

MAY TERM
1837.

Woodson & Trigg
v.
McClelland.

</div>

*Leonard*, for appellee,
Cited, Wellingford v. Allen, 10 Peter's Rep. 590, upon the point of dispositions of property between husband and wife—good without deed or writing, or the intervention of a trustee—a gift good where there is a deed, or writing, although no delivery; 1 Christ. Blac. 356, note 6.

Gifts between husband and wife are good in equity with out the intervention of trustees; 2 Kent's Com. 2d edition, 163: 1 Bac. abr. title Baron and Feme, D, 482, note (a); Lucas v. Lucas, 3 Atk. 270; Hanning v. Hanning, 3 P. Williams, 334; Bletsaw v. Sawyer, 1 Vern. 245, 1 Chit. Blac. Com. 356, note (38); 2 Kent's Com. (2d edition,) 173, 174; Sexton v. Wheaton, 5 Pet. Cond. Rep. 422; Read v. Livingston, 3 John. C. Rep. 481; Wellingford v. Allen, 10 Peter's Rep. 590.

It may be admitted that, if the husband be indebted at the time, such gifts or settlements are generally void as against existing creditors, but not as against subsequent creditors, unless made with intent to defraud, and then void only as against creditors; 2 Kent's Com. 173, 2d edition.

This gift even if it be void at law on account of the relation of husband and wife, is good as an agreement in equity. This shown by the cases cited above where a gift from husband to wife, is admitted to be valid in equity.

So in the same manner although the gift be adjudged

<div style="margin-left: left">

**MAY TERM**
**1837.**

Woodson & Trigg
v.
McClelland.

</div>

void under our statute, yet it is a good agreement in equity, and will be enforced there. A deed of bargain and sale under the British statute is void, unless enrolled within six months, yet if not enrolled within the time, a court of equity will enforce it as a good agreement, if there be either a valuable or good consideration; Maddock's Chancery, 1 vol. 48 and 50, top page.

It is admitted that a court of equity will not interfere to enforce an agreement, unless there be a valuable or meritorious (good) consideration.

This is a provision for a wife and child, which is at least a good (meritorious) consideration; 1. Maddock's Chancery, 48, top page, note (z); 1 Bun v. Winthorp, 1 John. C. Rep. 336, 7; Harry v. Alexander, 1 Randolph 219, cited in note to p. 256; Fonblanc's Equity, 256, top page, 4 John. C. Rep.: and even a valuable consideration, according to the cases cited below; Bun v. Winthorp, 1 John. C. Rep. 336, 7.

Opinion of the court, delivered by TOMPKINS, Judge.

At common law a married woman was not allowed to possess personal property independent of her husband ; but in equity she is allowed, through the medium of a trustee, to enjoy property as freely as a *feme sole*. Gifts from a husband to the wife may be supported as her separate property, if they be not prejudicial to creditors, even without the intervention of taustees. See 2 Kent's Com. p. 162, 3 and authorities there cited; see also, to same purpose, 1 Bacon, title Baron and Feme, P. 482, Letter (D) note (a). In this case there is a good and meritorious consideration, viz: money received in right of the wife from the estate of her father. The delivery of the deed to Hickman for her use, is certainly sufficient. In the case of Bun vs. Winthorp, a voluntary conveyance or settlement, though retained by the grantor in his possession until his death, is good, see 1 Johnson's ch. Rep, 329. The act respecting slaves, (see 31 and 32 sec., page 745, Rev. code of 1825) declares all gifts of slaves void, unless possession accompany the gift, or unless it be by will duly proved and recorded, or by deed proved by two witnesses, or acknowledged by the donor and recorded in the district court where one of the parties lives, within eight months after the date of such deed. It is not pretended that the requisitions of the statute have been complied with in this case. But there is a sufficient consideration here, viz: money received in the right of the wife, the donee by her husband, the donor, to distinguish

<div style="margin-left: left; font-size: small">

Gifts from husband to wife, whether voluntary or founded on a *good* consideration, will be sustained *inter partes* in a court of equity.— Where the deed is not recorded pursuant to our statute, it will still be valid between the parties, if founded on a *good* consideration.

</div>

this act from a pure gift, where there is no consideration; and as between the husband and wife, we have no doubt, that the deed ought to be held good and valid. It remains then, to be considered whether this court ought now to look into the evidence and decide whether the circuit court had before it evidence enough to support the decree. By the act to regulate the practice in courts of chancery of the year 1835, it is provided that the trial of all issues and matters of fact, shall be by jury, or if neither party require a jury, by the court, and the allegations put in issue, shall be disposed of by general or special verdict, before a final decree shall be made, &c. See sec. 5 of 3rd art. p. 511.

The act to regulate the practice in the Supreme court in appeals &c., provides that no exception shall be taken in an appeal or writ of error to any proceeding, except such as shall have been expressly decided by such court—see sec. 31, p. 522, Rev. code of 1825. Had the issues in this case been found by a jury, it is plain that the circut court would have been bound by the terms of the act, to decree on such finding; for by the 6th sec. of 3rd article of the act to regulate the practice in courts of chancery above referred to, it is provided that the court may award a new trial of any issue upon good cause shewn, but not more than one new trial of the same issue shall be granted to any one party, and the jury having found the issues the party against whom the finding is, must not apply to the court to dismiss the bill for defect of evidence, the jury having found that there is no defect of evidence, but he must ask for a new trial of the issues. A different course must not be pursued when the party has chosen to submit the issues to be tried by the court; for if this were to be allowed, the statute regulating the practice in courts of chancery, might be evaded. The appellants ought then to have asked the circuit court to award a new trial of the issues, and had that court refused to award such new trial, then there would have been such an express decision of the matter as would have authorized them to take an exception to the proceeding in the circuit court, under the 31st section of the act to regulate the practice in the supreme court in appeals, &c.; see Rev. Co. of 1835, p. 522. The argument generally urged against this practice is, that it is useless to ask a judge of a court sitting as a jury to try issues to try them again, for he will find them on a second trial as he found them at first. It is very true that the same man, or even the same body of men, having found an issue

MAY TERM
1837.

Woodson & Trigg
v.
McClelland.

Where an issue of fact is tried by a jury, or the court sitting as a jury, in a chancery cause, the only mode of having the justice of the verdict investigated in the court above, is by moving for a new trial before the decree is pronounced. A motion to dismiss the bill for defect of evidence, will not bring that question before the supreme court

**SUPREME COURT OF MISSOURI.**

wrong, is not so apt to correct that finding as another man or another body of men would be. But it is not an impossibility: every suitor ought before he chooses between the trial of an issue by a court, or by a jury, to weigh the consequences, and to be prepared to abide by them. The provisions of the statute must not be disregarded because he has found, or imagined he has found, his choice of the tribunal to be a bad one. We are then of opinion that the circuit court committed no error in refusing to dismiss the bill for defect of evidence. Being then of opinion that there is equity in the bill, we believe that the claim of the complainant is good against the administrators, and the circuit court having found that there is no defect of assets, its decree is affirmed with costs.